IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


UNITED STATES OF AMERICA,

                              Plaintiff,

Vs.                                          No. 07-40036-01-SAC

LAMAR M. HAYES,

                              Defendant.


MEMORANDUM AND ORDER

          This case comes before the court on the following motions filed

by defendant: motion for discovery (Dk. 4);motion for speedy trial (Dk. 46);

and motion to suppress evidence (Dk. 36).  The government has

responded to the motions. (Dk. 60) Defendant is charged by superseding

indictment with conspiracy to possess with intent to distribute cocaine,

possession with the intent to distribute cocaine, and four counts of using a

communication facility during a drug trafficking crime. After having taken

the motions under advisement at the close of the evidentiary hearing held

on March 6, 2008, the court is ready to rule.

**Facts**

In October of 2006, wiretap orders were issued, permitting law enforcement officers to legally monitor two telephones during an investigation which targeted the distribution of cocaine in Topeka, Kansas by Michael Jordan. Government agents thereafter taped a series of conversations between Jordan and this defendant in which the government asserts and the defendant denies that drug deals were discussed.

On October 9, 2006, defendant called Jordan on a wiretapped telephone and arranged to meet him.  Officer Doug Garman of the DEA Task Force testified that this call related to the distribution of controlled substances. Later that same day, Jordan called defendant and asked if it was the "same thing," and defendant replied that it was.  Defendant[1] agreed to meet with Jordan.

On November 20, 2006, Jordan called defendant again from a monitored telephone, and explained that he had "hard times" and was "trying to put the puzzle together." Officer Garman testified that this meant that Jordan was low or out of his supply of cocaine. The following day, Jordan called defendant to say he was sorry they had not met the day

[1]Jordan refers to defendant by his middle name, Michael, at times on the taped conversations.

2

before, that he ran into some snags, and that he would be at the Cedar
Crest Apartments where defendant could meet him.

On November 28, 2006, defendant called Jordan, who then called
defendant back on another phone. Defendant told Jordan he wanted to get
"one of those." Jordan told him he was going to get a haircut at a location
near 6th and Washburn, and would leave it in the ashtray or glovebox of his
car. Defendant responded that he would go get his money.

Upon hearing this information, Officer Garman solicited other officers
to assist with surveillance at the barbershop where Jordan stated he was
going. Officer Garman testified that he saw Jordan arrive in his vehicle,
leave his vehicle unattended, and enter the barbershop. Soon thereafter,
defendant arrived in another vehicle, went into the barbershop for a short
time, came out near his own vehicle, then entered Jordan's vehicle. While
in Jordan's vehicle, defendant sat in the driver's seat a few minutes and
was observed leaning back and moving as if putting his hands near his
waist. Defendant then exited Jordan's vehicle, entered his own vehicle, and
left.

Topeka Police Officer Dennis Bane, who had been briefed about the
investigation, participated in the surveillance. He saw defendant's vehicle

leave the barbershop and followed it for several miles. When defendant's vehicle exited I-70 at Fairlawn Road, Officer Bane saw defendant commit two traffic infractions: defendant failed to signal his left turn onto Fairlawn Road, and he failed to turn into the closest lane of his direction of traffic. Officer Bane radioed this information to Officer Green.

Topeka Police Officer Green, who had also been briefed about the investigation, saw defendant's vehicle pass him, then followed it and activated his emergency lights. Defendant's vehicle pulled into the nearly Motel 6. When asked, defendant told Officer Green that he had no driver's license. When asked for identification, defendant said he had none. Defendant told the officer his name, however. The officer then asked defendant to exit the vehicle and handcuffed him, telling him he was not under arrest but was placing him in custody for identification purposes.

The defendant then told Officer Green that he had an identification card in his wallet on the driver's seat or the console between the two front seats. Defendant told Officer Green his wallet was "right there," motioning with his head. Officer Green then leaned into the vehicle to retrieve the wallet, and saw a baggie of what he suspected to be powder cocaine on the drivers' side floorboard protruding from under the seat. Defendant was

4

then arrested, and the car was fully searched.

**Motion to suppress**

Defendant contends that the government cannot meet its burden to show that the warrantless search of defendant's vehicle was subject to any exception to the general rule prohibiting warrantless searches. Defendant contends that the baggie was not in plain view, and that police conducted a warrantless search of his car without probable cause in order to find it. Defendant correctly notes that the car was not impounded at the time of the search, and that the defendant never consented to the search, and that defendant was not under arrest at the time of the search.

The government submits that the initial stop of the vehicle was justified by probable cause obtained from the wire conversations plus the surveillance, or by observed traffic violations. The government contends that the arrest is justified based upon probable cause obtained from the wire conversations plus the surveillance or based upon defendant's driving without a driver's license.  It also submits that he seizure of the cocaine is justified under the plain view doctrine, as a search incident to a lawful arrest, and/or under the inevitable discovery doctrine.

Because defendant's motion does not challenge the initial stop or the

defendant's arrest, the court will address only the warrantless search of the

vehicle and the seizure of the cocaine.

### Probable Cause

The court first examines whether the officers had probable cause to

stop defendant's vehicle and arrest him.

> "Probable cause to arrest exists only when the facts and
> circumstances within the officers' knowledge, and of which they have
> reasonably trustworthy information, are sufficient in themselves to
> warrant a man of reasonable caution in the belief that an offense has
> been or is being committed." *United States v. Valenzuela*, 365 F.3d
> 892, 896 (10th Cir.2004) (internal quotation marks omitted).
> "Probable cause does not require facts sufficient for a finding of guilt;
> however, it does require more than mere suspicion." *United States v.
> Morris*, 247 F.3d 1080, 1088 (10th Cir.2001) (internal quotation marks
> omitted). "Probable cause is measured against an objective
> standard.... [T]he primary concern is whether a reasonable officer
> would have believed that probable cause existed to arrest the
> defendant based on the information possessed by the arresting
> officer." *Valenzuela*, 365 F.3d at 896-97.

*United States v. Soto*, 375 F.3d 1219, 1222 (10th Cir. 2004). Probable

cause for an arrest may be based on the collective knowledge of the police.

*United States v. Merritt*, 695 F.2d 1263 (10th Cir.1982), *cert. denied*, 461

U.S. 916 (1983); *see United States v. Miramonted*, 365 F.3d 902, 905 (10th

Cir.2004). Thus in determining probable cause, the court looks not only to

those facts known by the officer who took the challenged action, but also to

the facts known by all officers involved in that action. " 'Probable cause

6

must be evaluated in light of circumstances as they would have appeared to a prudent, cautious, trained police officer.' " *United States v. Snow*, 82 F.3d 935, 942 (10th Cir.1996) (quoting *United States v. Morgan*, 936 F.2d 1561, 1568 (10th Cir.1991), *cert. denied*, 502 U.S.102 (1992))*. See United States v. Lopez, __* F.3d __, 2008 WL 570802, *8 (10th Cir. 2008).

Here, the existence of probable cause is based in large part upon Officer Garman's opinion about the meaning of various words in defendant's recorded conversations with Jordan. In a drug conspiracy investigation, "the targets are likely to be sophisticated enough to employ guarded or coded language." *United States v. Grabow*, 621 F.Supp. 787, 793 (D.C.Colo. 1985).  It is not unusual for wiretaps to capture conversations "peppered with terms whose common meanings are entirely innocuous," and for the government to present evidence of alternate definitions for those terms as they are used in the drug trade. *See e.g., United States v. Ramirez*, 479 F.3d 1229, 1236 (10th Cir. 2007), *cert. denied*, __ U.S. __, 128 S.Ct. 1074 (2008)*; United States v. Quintana*, 70 F.3d 1167, 1170-71 (10th Cir.1995); *United States v. Garcia*, 994 F.2d 1499, 1506 (10th Cir.1993). No objection was made at the hearing regarding Officer Garman's opinion testimony.

Officer Garman testified that he based his conclusion that certain words were veiled references to drug transactions upon his general training and experience in drug trafficking matters, as well as upon his specific experience throughout the 18-month investigation of Jordan and the 60-day wiretap of the target phones. He stated that his understanding of the coded terms was reinforced by co-defendants who confirmed in their debriefings that the term "puzzle" usually referred to one kilogram of cocaine.

The prior conversations between defendant and Jordan, coupled with the acts the officers observed involving those two defendants and their vehicles on November 28, 2006, are sufficient in themselves to warrant a reasonable police officer in believing that a drug offense was being committed. *See United States v. Soto*, 375 F.3d 1219 (10th Cir.2004). Accordingly, the officers acted legally in stopping defendant's vehicle and arresting defendant for the suspected drug offense.

### Search incident to a lawful arrest

Defendant contends that the search of his vehicle was not incident to arrest because he was not arrested until after the cocaine was found. Even assuming this is so, the search is nonetheless justified as a search incident to lawful arrest.

8

The Tenth Circuit has held that a legitimate "search incident to arrest" need not take place after the arrest.

> The Fourth Amendment normally requires that law enforcement officers obtain a warrant, based on probable cause, before conducting a search. *See, e.g., New York v. Belton*, 453 U.S. 454, 457, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). There are limited exceptions to that rule, however, one of which is that officers may conduct a warrantless search of a person when it is incident to a lawful arrest of that person. *See Chimel v. California*, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In order to be a legitimate "search incident to arrest," the search need not take place after the arrest. A warrantless search preceding an arrest is a legitimate "search incident to arrest" as long as (1) a legitimate basis for the arrest existed before the search, and (2) the arrest followed shortly after the search. *See United States v. Rivera*, 867 F.2d 1261, 1264 (10th Cir.1989); *cf. Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (stating that where the arrest was justified before the search and the arrest "followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa."). Whether or not the officer intended to actually arrest the defendant at the time of the search is immaterial to this two-part inquiry. *See United States v. Ricard*, 563 F.2d 45, 49 (2d Cir.1977).

*United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir.1998). Thus, whether defendant was formally placed under arrest before or after the baggie was found is immaterial.

Nor is the fact that the baggie was not found on defendant's person controlling.  When a police officer has made a lawful custodial arrest of an occupant of an automobile, the Fourth Amendment allows the officer to

search the passenger compartment of that vehicle as a contemporaneous incident of arrest. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). *See also Thornton v. United States*, 541 U.S. 615, 623, 124 S.Ct. 2127, 2132 (2004) ( holding that the Fourth Amendment allows an officer to search a vehicle's passenger compartment as a contemporaneous incident of arrest, even when the officer does not make contact until the person arrested has already left the vehicle). "Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment." *Id.*

Officer Green could have arrested defendant prior to the search based on probable cause to believe that defendant had committed either a criminal drug offense, as discussed above, or the offense of driving without a valid driver's license. *See* Kan. Stat. Ann. § 8-235(a) 2007 Session Laws (prohibiting any person from driving a motor vehicle upon a highway in Kansas unless the person has a valid driver's license or is exempted from the same, and providing in subsection (e) that violation of the section shall constitute a class B misdemeanor). The warrantless search was thus a legitimate "search incident to arrest" because a legitimate basis for the

arrest existed before the search, and the arrest followed shortly after the search.

The court finds it unnecessary to address the government's other proffered justifications for the search except to note the applicability of inevitable discovery doctrine, given Officer Green's testimony that he would not have let defendant depart in the vehicle but would have impounded it in accordance with departmental policy because its sole driver/occupant was unable to legally operate the vehicle, and that a full inventory search would have followed. *See United States v. Martinez*, 512 F.3d 1268, 1273 -1274 (10th Cir. 2008).

**Motion for discovery** (Dk. 4)

This motion, requesting all information, reports, documents, transcriptions, audio and video tapes and photographs for this case, was filed by defendant's previous counsel in April of 2007, the day after the General Order of Discovery was filed. The government has responded that full discovery has been provided to defendant's current counsel, and defendant's counsel confirmed its receipt of such at the hearing. This motion is thus moot.

**Motion for Speedy Trial** (Dk. 46)

11

This motion was filed by defendant without the assistance of counsel, at time when he was represented by counsel.  Historically, this court has cautioned defendants against filing pro se motions when they are represented by counsel. *See United States v. White*, 2006 WL 1360165 *13 (D.Kan. May 17, 2006) (No. 05-40114-01- SAC, 05-40114-02-SAC) (unpublished), citing *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir.1981) (holding that in the absence of extraordinary circumstances, a criminal defendant represented by counsel does not have a constitutional right to file every pro-se motion he wants to file in addition to his attorney's motions); *United States v. Price*, 2004 WL 2005790, *5 (D.Kan. 2004). Defendant's counsel has not adopted defendant's pro se motion, and at the hearing, indicated that he does not adopt it. Defendant is specifically admonished not to file further documents without the assistance of his able counsel.

The court finds this motion to be moot because the court's practices strictly honor defendant's right to a speedy trial. Defendant is referred to the government's brief for specific calculations of excludable time.

IT IS THEREFORE ORDERED that defendant's motion to suppress (Dk. 36) is denied, that defendant's motion for discovery (Dk. 4)  is denied

as moot, and that his motion for speedy trial (Dk. 46) is denied as moot.

Dated this 11th day of March, 2008, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge